**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NATHAN TODD SHAFER,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3:15-CV-1716-D-BK** |
| | § | **(Criminal No. 3:09-CR-00249-D-5)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner's motion to vacate sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge. Upon review of the relevant pleadings and law, and for the reasons that follow, it is recommended that the section 2255 motion be **DENIED**.

## I. BACKGROUND

In 2009, Petitioner, along with 19 co-defendants, was indicted for his involvement in a lengthy conspiracy to defraud telecommunications companies and other entities. In 2011, after a ten-week jury trial, Petitioner, and three co-defendants, were convicted of conspiracy to commit wire and mail fraud. In 2012, he was sentenced to 108 months' imprisonment and a two-year term of supervised release, and was ordered to pay restitution in the amount of $3,262,909.50. Crim. Doc. 1530. Subsequently, his conviction and sentence were affirmed on direct appeal. *United States v. Simpson, et al.*, 741 F.3d 539 (5th Cir.), *cert. denied*, *Schafer v. United States*, 136 S. Ct 920 (2014).

In this timely section 2255 motion, Petitioner, through his retained counsel, asserts trial counsel rendered ineffective assistance at sentencing. Doc. 1. The government argues the claim lacks merit. Doc. 7. Petitioner has filed a reply. Doc. 8.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*)). Under section 2255 a petitioner can collaterally challenge his conviction only on constitutional or jurisdictional grounds. *See United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove deficient performance, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of ineffective assistance of counsel at sentencing, the petitioner must demonstrate that the sentence was increased by the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001).

### A. Failure to Raise a Proper, Meritorious Objection

Petitioner asserts his sentencing counsel rendered ineffective assistance when he failed

"to lodge a proper objection" to XO Communications' ("XO") loss.[1] Doc. 1 at 6-9; Doc. 8 at 4. Petitioner maintains counsel should have argued that XO did not suffer any loss for guidelines calculation purposes, instead of arguing that XO's loss could not be attributed to him. *Id.* Petitioner relies on evidence outside the record to support his contention that XO did not sustain a loss with respect to A&B Communications ("A&B") and Incavox. Specifically, he cites to "catch notes" (real time notes by XO employees summarizing action taken on an account) and comments contained therein that the A&B and Incavox debts were pending "write off." Doc. 1 at 3-6. Petitioner also argues that XO could not have suffered any loss due to forfeited "monthly recurrent charges" ("MRCs") after its service was cancelled. Doc. 1 at 6-8.

Before sentencing, the Court held an evidentiary hearing on the calculation of the loss amounts included in the Presentence Report ("PSR") and Addenda, and to determine the amount attributable to Petitioner and his co-defendant. *Simpson*, 741 F.3d at 557. Defense counsel had objected to the PSR and Addendum, contending: (1) the information relied on to determine the loss amount was not reliable; and (2) that the calculated loss amount in the PSR was not attributable to Petitioner since the alleged losses were either speculative or incurred prior to him joining the conspiracy. Crim. Doc. 1463 at 14-15; Crim. Doc. 1493 at 11-13. At the evidentiary hearing, the Court granted several of counsel's objections to the loss calculation, finding Petitioner was not responsible for any losses that occurred before he joined the conspiracy. *Simpson*, 741 F.3d at 557. The Court also excluded from the calculation those losses for which the basis lacked sufficient indicia of reliability. *Id.* However, the Court rejected Petitioner's other objections, concluding the challenged losses were reasonably foreseeable to Petitioner and

[1] As the United States Court of Appeals for the Fifth Circuit noted, only the loss to XO Communications was large enough to affect Petitioner's offense level and, thus, impact the sentence he received. *Simpson*, 741 F.3d at 557.

based on sufficiently reliable information. *Id.* On appeal, the Court of Appeals for the Fifth Circuit found no basis on which to conclude that the district court had clearly erred in calculating the $3.2 million loss amounts attributable to Petitioner. *Id.* at 557-558.

In the motion *sub judice*, Petitioner criticizes sentencing counsel for failing to raise a proper, meritorious objection -- namely that XO did not incur any loss for sentencing guidelines purposes. However, notwithstanding his improper proffer of evidence outside of the record and conclusory assertions, Petitioner has failed to meet the high burden of establishing that counsel's performance at sentencing was deficient and that it prejudiced him. The record confirms that counsel's performance during the sentencing proceeding was not constitutionally deficient.

As previously recounted herein, counsel successfully raised numerous objections to the loss calculations to the PSR, both in writing and during the evidentiary hearing. By way of example, regarding XO, counsel argued that the $1,303,439.51 loss should not be attributed to Petitioner because (1) it was not clear when it occurred and, thus, it might have been before he joined the conspiracy, and (2) it was unclear what charges were included in the calculation. Crim. Doc. 1727 at 289-290, *Evidentiary Hearing. Transcript*. The Court overruled the objections. Crim. Doc. 1727 at 289-290. In affirming the Court's ruling, the appellate court held:

> The agent testified at the evidentiary hearing that this portion of XO Communications' losses related to services XO had provided to two companies operated by the co-conspirators, A&B Communications and Incavox. XO's representative at trial testified that the losses from A&B, which amounted to nearly $270,000, were billed by March 2009. XO's representative testified that the Incavox losses on two separate accounts, one with a loss around $237,000 and one with a loss of nearly $800,000, were billed by March or April of 2009. Shafer pretending to be someone else, signed the XO contract for Incavox in February 2009. Shafer joined the conspiracy in October 2008. Though on appeal Shafer questions the bases of these losses, he does not point to any countervailing evidence showing that XO Communications did not suffer those losses.

*Simpson*, 741 F.3d at 557-558.

In the motion *sub judice*, Petitioner simply has not demonstrated that sentencing counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. A review of the record reveals that counsel's performance at the evidentiary hearing was reasonable when measured against prevailing professional norms. *Id.* at 688 (counsel's assistance is deficient when it falls "below an objective standard of reasonableness"). Petitioner's reliance on hindsight to support his ineffectiveness claim finds no support in the Sixth Amendment. *Id.* at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Furthermore, contrary to Petitioner's assertion, the fact that counsel was unsuccessful in his efforts to challenge XO losses does not mean that he was legally deficient.

Petitioner cites *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004), for the proposition that "where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." Doc. 1 at 8; Doc. 8 at 2. He argues that "there is no basis to distinguish between the failure to object at all to an improper enhancement and a failure [as in this case] to advance a meritorious objection to an improper enhancement." *Id.* However, *Jansen* is inapposite since there, sentencing counsel failed to urge an objection to the Guidelines Offense Level that was readily apparent from the record and the law of the circuit. *Jansen*, 369 F.3d at 243-244. In *Jansen*, the defendant had consistently claimed that the drugs found in his pants were for personal use and, at the time of sentencing, at least two other circuit courts had held that drugs possessed for mere personal use should not

enter into sentencing computation. *Id.* Thus, the court concluded that counsel should have objected to the inclusion of drugs defendant claimed were for personal use in the computation of the base offense level. *Id.* Here, however, Petitioner's counsel did not fail to urge a clear and obvious objection to XO loss. *Cf. United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (finding deficient performance where counsel did not object to an error that was "obvious" and governed by clear precedent). Indeed, as discussed previously, Petitioner fails to cite to any evidence of record or legal authority that suggests lodging an objection to the calculation of the loss should have been obvious to counsel.[2] Again, the primary evidentiary basis for Petitioner argument is outside of the record -- "catch notes" and an affidavit from an expert in the telecommunication field. That notwithstanding, the Court's loss calculation is not undermined by Petitioner's proposed objections.

Regarding A&B, Petitioner selectively references "catch notes" from November 19, 2009, and March 26, 2010, suggesting that the account "was never used," that it was billed in error, and that it was waiting "writing off." Doc. 1 at 3; Doc. 1 at 14-15 (Exhibit B). However, "catch notes" from December 2009 (also included in Exhibit B) indicate that the A&B account had been "suspended for nonpayment," not for lack of usage as Petitioner suggests, and that $269,786.62 had been submitted for "BAD DEBT WRITE-OFF FOR NONPAYMENT." Doc. 1 at 15. Thus, the "catch notes" do not support Petitioner's conclusory assertion that XO had not suffered the loss attributable to A&B. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."). Moreover, as the government correctly states, a loss is not removed simply because it is written off as a bad debt. Doc. 7 at 8.

[2] Mr. Gill was XO's finance director. Crim. Doc. 1696 at 180.

With respect to Incavox, Petitioner asserts counsel failed to bring issues with the reliability of Mr. Gill's testimony and/or the XO "catch notes" to the Court's attention at the sentencing evidentiary hearing. Doc. 1 at 4-6. Relying on the affidavit of David J. Malfara, Sr. ("Malfara"), an expert in the telecommunication field, Petitioner contends there were errors in Mr. Gill's trial testimony. Doc. 1 at 4-6; Doc. 1 at 19-21, *Malfara's Affidavit*. Specifically, he maintains that, even if there was usage, it would have been mathematically impossible for Incavox to use a million dollars' worth of service in at most five days. *Id.*

Petitioner also contends the XO "catch notes" indicate that at least $766,089.98 of the Incavox charges were not based on actual usage, but on MRCs for service XO never actually provided. Doc. 1 at 5 (citing to Exhibit D, Doc. 1 at 29).[3] He avers it is "self-evident that monthly recurrent charges for years of future service which a defendant did not use are not 'loss' to the victim." Doc. 1 at 6. Again Petitioner's assertions wholly unsupported and conclusory. As the Government aptly notes, because XO reserved a certain amount of capacity on its network for a particular customer in return for MRCs, it incurred a loss every time a customer failed to pay the MRC. Doc. 7 at 8-9.

In his reply, Petitioner contends that "'loss' does not include 'bargained-for and so-called opportunity cost' interest," and that that the Government does not explain how charging MRCs "is different than basing loss on 'bargained-for and so-called opportunity cost' interest." Doc. 8 at 6. Even so, on direct appeal, the appellate court found that losses from A&B and Incavox were for "services XO had provided" and that "were billed" by March or April 2009. *See Simpson*, 741 F.3d 539, 558. The appellate court's decision regarding XO losses constitutes the

[3] As with A&B, the notes on the Incavox account indicate a bad debt write off for nonpayment, not lack of usage. Doc. 1 at 29.

law of the case for purposes of this section 2255 action; thus, the Court will not revisit the issue.[4] *See Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) ("If issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack."); *see also United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997) (citing *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986)); *United States v. Goudeau*, 512 F. Appx. 390, 393 (5th Cir. 2013) ("we may not consider an issue disposed of in [a] previous appeal at the § 2255 stage.").

Based on the foregoing, Petitioner cannot establish that counsel's performance at sentencing was constitutionally deficient. Nevertheless, even assuming deficient performance, Petitioner has not shown prejudice -- namely that the result of the sentencing hearing would have been different. *Strickland*, 466 U.S. at 694. He merely asserts that counsel's failure to present a proper objection caused a two-level increase in offense level, Doc. 1 at 9, and does not expound on the likelihood that the Court would have ruled in his favor especially in light of the agent's detailed testimony at the evidentiary hearing. *Simpson*, 741 F.3d at 557-558. Accordingly, Petitioner's claim fails.

**B. Failure to Present Adequate Supporting Evidence**

Petitioner also asserts sentencing counsel failed to present adequate "'evidentiary submissions' by way of documentary evidence, testimonial evidence and/or expert testimony" to support a proper objection at sentencing. Doc. 1 at 6, 9; Doc. 8 at 4. Having reviewed the relevant evidentiary submissions and concluded that counsel was not ineffective in failing to

[4] Notably on direct appeal, Petitioner claimed that XO loss "derived from billing for the flat rate for service or 'monthly recurring fee' that it had negotiated with Incavox," and claimed that XO suffered no actual loss because "[t]he $796,000 it claimed to be owed as a result of its contract with Incavox was for service it never actually provided, and included charges for taxes that XO was never required to pay." *See* Appellant's Reply Brief at 9-10, USCA No. 12-10574.

offer a "proper objection" at sentencing, this claim likewise fails.

### C. Ineffective Assistance of Counsel on Appeal

Lastly, Petitioner raises, in "an abundance of caution," a claim of ineffective assistance of appellate counsel. Doc. 1 at 9, note 9. He raises this claim by footnote only "in the event the Court was to conclude that [Petitioner] could have presented a different argument on appeal than the one presented at sentencing." *Id.* This "alternative" claim is neither adequately pled nor briefed, thus, the Court declines to consider it.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to vacate sentence under 28 U.S.C. § 2255 be **DENIED**.

SIGNED February 22, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE